IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
JANUARY SESSION, 1997

FILED

April 23, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | No. 02C01-9606-CR-00188 |
| Appellee | ) | |
| | ) | SHELBY COUNTY |
| vs. | ) | |
| | ) | Hon. Bernie Weinman, Judge |
| JULIUS E. PARKER, | ) | |
| | ) | (First Degree Murder; |
| Appellant | ) | Agg. Robbery) |

For the Appellant:

Benjamin F. Head
Attorney at Law
147 Jefferson, Suite 408
Memphis, TN 38103

For the Appellee:

John Knox Walkup
Attorney General and Reporter

Deborah A. Tullis
Assistant Attorney General
Criminal Justice Division
450 James Robertson Parkway
Nashville, TN 37243-0493

John W. Pierotti
District Attorney General

Reginald Henderson
Asst. District Attorney General
Criminal Justice Complex
201 Poplar St., Suite 301
Memphis, TN  38103

OPINION FILED: _____

AFFIRMED

**David G. Hayes**
Judge

**OPINION**

The appellant, Julius E. Parker, appeals his jury convictions for the crimes of aggravated robbery and felony murder. The Shelby County Criminal Court sentenced the appellant to life imprisonment for the felony murder conviction and eight years incarceration for the aggravated robbery conviction, with the sentences to run concurrently. In this appeal as of right, the appellant raises the following issues:

> I. Whether the evidence is sufficient to sustain the appellant's convictions and sentences.
>
> II. Whether the trial court properly admitted into evidence a tape of the 911 call made by the robbery victim.
>
> III. Whether the trial court properly denied the appellant's motion to suppress the appellant's statements to the police.
>
> IV. Whether the trial court properly admitted photographs of the victim into evidence.
>
> V. Whether the trial court failed to instruct the jury on the lesser offense of facilitation of felony murder.

After a review of the record, we affirm the judgment of the trial court.

**I. Background**

On October 4, 1994, a Shelby County Grand Jury returned a multi-count indictment charging the appellant with one count of first degree murder, one count of murder in the perpetration of a felony, and one count of aggravated robbery.[1]

---

[1]Jerome D. Moss and Anthony J. Colbert were also named as co-defendants in the indictment. The record indicates that, prior to the appellant's trial, Moss pled guilty to second degree murder and was sentenced to forty-five years in the Department of Correction. No disposition is shown as to Colbert.

2

At the appellant's trial, the State's principal witness was the co-defendant, Jerome Moss. Moss testified that, on March 17, 1994, he, the appellant, Anthony Colbert, Amos Wilson, and Cecil Dotson, planned to "rob the dope man." However, their criminal venture proved unsuccessful as they were unable to find their intended victim. Moss stated that, as the group began the walk "towards the house . . . [the appellant] said if we would go in the [Five Star Grocery] with him he'd rob the store." The appellant, Moss, and Colbert entered the store. The appellant and Colbert remained at the front of the store, while Moss proceeded to the rear. Moss testified that, at this point, he was not armed with a weapon, however, the appellant was in possession of "a chrome .380 with a black handle," and Colbert had a ".32 automatic." The appellant and Colbert "laid the [owner of the store] out on the floor." At the same time, William Bowles, an employee, came toward Moss. Moss hit Bowles on the head with a bottle of beer. The appellant took the pistol to the back of the store and handed it to Moss. Bowles attempted to rise, but Moss ordered him remain on the floor. Moss removed the safety from the pistol and one shot was fired fatally striking Bowles in the head.[2] The three men then ran out of the store.

Moss stated that he, Colbert and the appellant were joined by Wilson and Dotson, who had been waiting outside the store. All five then ran down Fourth Street.[3] Once the group reached an empty apartment, the appellant divided the money taken during the robbery and distributed the proceeds accordingly:

the appellant, Moss and Colbert receiving forty-seven dollars each, and Wilson and Dotson receiving forty-one dollars each.

---

[2]In his statement to the police, Moss contended that "the gun was broke and if you cock the gun without it being on safety, it will shoot without pulling the trigger."

[3]Deangelo Small testified that, on March 17, 1994 around 9:45 p.m., he observed four "guys" enter the Five Star Market. Shortly thereafter, he heard a "pop" and saw the four "guys" come running out of the store. Anthony Flake also testified that, at 10:00 p.m. that same evening, he saw four guys run past his security booth on Fourth Street heading toward the railroad tracks.

During the robbery, the owner of the store placed two emergency 911 calls to the police reporting the robbery. The State introduced these tapes into evidence, however, the tapes were neither transcribed nor included in the record on appeal. Officers Terry Landrum and Cham N. Payne, Memphis Police Department, responded to the robbery call at the Five Star Grocery. Upon his arrival, Officer Landrum located the owner of the store who reported the robbery and advised him that "somebody's been shot."

Both officers described the interior of the store at the time of their arrival. "On the floor in front of the counter, [there was] broken glass. On the counter top, [there was] a brown paper bag." "There was a cash drawer laying on the floor. There was change scattered behind the cash register." "There was also a five dollar food coupon and an empty food coupon booklet." "There was a big pool of beer in the hallway. There was a little aisle between the merchandise with. . . glass from a beer bottle." "[There were] blood drippings [on the floor.]" "And there was a male black subject in the back that had been shot in the head." Testimony of the medical examiner established that the victim's death was the result of "a gun shot wound to the head, with a bullet passing inside the brain, producing hemorrhage inside the skull and small cuts to the face."

Sergeant Richard Roleson, one of the officer's investigating the case, took the appellant's statement after his arrest. The appellant signed a waiver of rights before giving the statement. See infra Section IV, Motion to Suppress. In this statement, the appellant stated that, "in a way [he] knew, and in a way [he] didn't" know about the robbery, however, he admitted that he was supposed to "snatch the money." The appellant's statement corroborated Moss's testimony regarding the facts leading up to and following the crimes. This concluded the State's proof.

4

The defense called the co-defendant, Anthony Colbert. Colbert testified that only he and Moss entered the Five Star Grocery. He maintained that the appellant remained outside the store. Moreover, he testified that there were no plans to rob the store. In explanation of his prior statement which implicated the appellant, Colbert explained that he lied "[b]ecause he had told it on me, so I was going to take him with me." However, Colbert's prior statement, introduced during cross-examination for impeachment purposes, supported Moss's testimony.

Next, the appellant took the stand. He confirmed that he was in the store with Moss and Colbert, however, he did not know about the robbery. Rather, he maintained that he entered the store in order to purchase cigars. In this regard, he testified that:

> . . . There was two of us had some money. Me and Colbert. And Moss come in, and for him not to have no money, he was searching around the store like he had some, you know. He went on to the back and picking up things, you know. . . . [S]omething's fixin' to go down, you know. I looked at him and I looked at Colbert beside me and Moss back there and I kind of figured, I said, "Man, something's fixin' to happen or something. . . . I heard a bottle burst. . . .Colbert looked at me real hard, and I knew what that sign was. And I broke. As I ran I saw . . . Wayne Dotson and Amos. And I said, "Man, those fools robbing this store."

The defense also called Cecil Dotson. Dotson testified that there was no plan to rob the store and that the appellant was not in the store when the shot was fired. Despite this testimony, Dotson confirmed, on cross-examination, that he had previously told the police that the appellant was inside the store and that he had received forty-one dollars from the proceeds. Finally, Pamela Wiggins testified that Moss and the appellant did not get along. She also stated that the day after the crimes, she observed the appellant buying clothes and shoes. Moreover, she heard the appellant tell "Cecil's brother that . . . 'I got bud's money, we robbed somebody,' or something of that effect.'"

5

## II. Sufficiency of Evidence

The appellant contends that the evidence at trial was insufficient to convict him of felony murder and aggravated robbery. Specifically, he argues that the only evidence of his knowledge and participation in the robbery of the Five Star Grocery was the testimony of Jerome Moss. He asserts that Moss' testimony is incredible because Moss received a deal from the State, he and the appellant did not get along, and the appellant had implicated Moss in the crimes.

A conviction by the trier of fact removes the presumption of innocence and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of proving that the evidence is insufficient. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). On appeal, the State is entitled to the strongest legitimate view of the evidence and all legitimate or reasonable inferences which may be drawn therefrom. State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992), cert. denied, 507 U.S. 954, 113 S.Ct. 1368 (1993). It is the appellate court's duty to affirm the conviction if the evidence viewed under these standards was sufficient for any rational trier of fact to have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 317, 99 S.Ct. 2781, 2789 (1979); State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994), cert. denied, -- U.S. --, 115 S.Ct. 743 (1995); Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

The appellant contends that, although Moss' testimony implicated the appellant in both the preparation and execution of the robbery, at trial, the testimony of Colbert, Dotson, and the appellant provided evidence to the contrary. The record does not support this allegation. Indeed, the prior

6

statement by the appellant introduced by the State at trial not only placed the appellant at the scene of the crime, but also confirmed his knowledge, preparation, and participation in the robbery. Moreover, matters concerning the credibility of witnesses are determined by the trier of fact and not this court. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). A guilty verdict, approved by the trial court, accredits the testimony of the State's witnesses and resolves all conflicts in favor of the theory of the State. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).

Tenn. Code Ann. § 39-13-402(1991) defines aggravated robbery as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear," Tenn. Code Ann. § 39-13-401(a) (1991), and the robbery is "accomplished with a deadly weapon. . ." or "where the victim suffers serious bodily injury." The evidence presented at trial clearly demonstrates that the appellant actively participated in, if not initiated, the aggravated robbery of the Five Star Grocery, that the appellant was in possession of a .380 automatic weapon, that the appellant took the money from the store, and that the appellant divided the proceeds between all participants.

Felony murder is "[a] reckless killing of another committed in the perpetration of, or attempt to perpetrate any . . . robbery . . . ." Tenn. Code Ann. § 39-13-202(a)(2) (1994 Supp.). In the present case, Moss admitted that he was holding the weapon when Bowles was killed. Nonetheless, "[w]hen one enters into a scheme with another to commit one of the felonies enumerated in Tenn. Code Ann. § 39-13-202, in this case [robbery], and death ensues, both defendants are responsible for the death, regardless of who actually committed the murder and whether the killing was specifically contemplated by the other." State v. Brown, 756 S.W.2d 700, 704 (Tenn. Crim. App. 1988). The evidence

7

clearly establishes that the appellant actively participated in the robbery, and, as such, he became accountable for all consequences flowing from the robbery. See Brown, 756 S.W.2d at 703. Accordingly, we conclude that his convictions for felony murder and aggravated robbery are amply supported by the evidence and that a rational trier of fact could have found the essential elements of both offenses beyond a reasonable doubt. This issue is without merit.

### III. Tape of the 911 Emergency Call

Next, the appellant argues that the trial court erred in permitting the introduction of the audio tape of the 911 emergency call made by the robbery victim. Specifically, he contends that the tape was not properly authenticated and that "the statements by the dispatcher are inaccurate and prejudicial."

The audio tape recording of the 911 emergency call was introduced into evidence as a public record. Tenn. R. Evid. 803(8). The tape was introduced through the testimony of the supervisor and custodian of the records. The custodian testified that he was an employee of the Communications Bureau of the Memphis Police Department. He explained the procedure by which records of incoming calls are retained. Thus, the introduction of the tape recording to support the fact that a 911 emergency call was recorded on the time and date specified, the address the call was placed from, and other relevant "data" was admissible. However, the content of the tape recording, in order to be admissible, must also satisfy an exception to the hearsay rule, because the citizens who place 911 emergency calls are not under a "duty to report."

Under certain circumstances, such a statement may qualify as an "excited utterance." See Tenn. R. Evid. 803(2). To qualify as an "excited utterance," the

8

statement must be "relating to a startling event or condition . . . while the declarant was under the stress of excitement caused by the event or condition." Tenn. R. Evid. 803(2). Yet, even if the statement satisfies this hearsay exception, as in the present case, the statement must still be authenticated prior to its admission.[4] For the purpose of authentication, the voices on a 911 tape recording must be identified "by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker." Tenn. R. Evid. 901(b)(5). At trial, the appellant objected to the admissibility of the tape because the alleged caller on the tape was never identified as being the robbery victim in this case. In this case, the custodian of the record was unable to identify the voice on the tape as being the speaker, i.e., the robbery victim. Accordingly, the statements on the tape of the 911 call were not properly authenticated, and, therefore, were improperly admitted. Cf. State v. Smith, 868 S.W.2d 561, 577 (Tenn. 1993) (statements on tape of emergency 911 call properly admitted as "excited utterance" after voice identification of the caller by 911 operator who received the call).

As previously indicated, neither the tape nor a transcription of the tape recording was included in the record.[5] Thus, we are precluded from reviewing the appellant's allegations of the prejudicial impact of the tape. It is incumbent upon the complaining party to prepare a full and adequate account of the record for our review. State v. Ballard, 855 S.W.2d 557, 560-61 (Tenn. 1993); Tenn. R. App. P.24. Absent the necessary relevant material in the record an appellate court cannot consider the merits of an issue. See Tenn. R. App. P. 24(b). Moreover, even in the absence of the tape recording of the emergency 911 call, we conclude that any error in its admittance is harmless. Tenn. R. Crim. P.

---

[4]The trial court properly found the tape recording to be admissible hearsay pursuant to Tenn. R. Evid. 803(2), excited utterance.

[5]Although the record reflects the tape was played for the jury, the court reporter apparently did not transcribe the statements being played for inclusion in the record.

9

52(a). The evidence overwhelmingly supports the jury's finding that the appellant participated in the robbery of the Five Star Grocery. This issue is without merit.

## IV. Motion to Suppress

The appellant contends that the trial court erred in failing to suppress his statements given to the police. Specifically, the appellant contends that, because his rights were not "explained" and because he was "coerced, brow beatened [sic], threatened of not ever getting out of jail, the death penalty and with promises that he would be able to go home," his statements were not voluntary.

At the suppression hearing, Sergeant Roleson testified that the appellant gave two statements to the police, one on April 15, 1994 at 9:40 a.m., and the second on April 18, 1994 at 1:27 p.m.[6] Both statements were taken at the police station. He added that, on April 15, the appellant was advised of his rights in the presence of his mother and waived those rights prior to making any statement. In this statement, the appellant denied any participation in the crimes. Roleson further testified that, on April 18, 1994, the appellant contacted him from the jail and informed him that he wished to make another statement. Again, the appellant was advised of his rights and signed another waiver. In this second statement, the appellant admitted knowledge of the robbery, his presence in the store, and his role in "snatch[ing] the money."

The appellant, however, testified that his statements were not voluntary and were the result of coercion and threats by the interviewing officers.

---

[6]At the time of his initial statement, the appellant was not under arrest. However, on April 16, after his two co-defendants implicated him in the crimes, the appellant was arrested and in custody.

Specifically, the appellant contends that the officers did not explain his rights to him, that the officers accused him of lying, that the officers threatened that the appellant would never see his children again, that the officers threatened to kill his two co-defendants, and that the officers threatened to "send him to a penitentiary."  To explain his attested untruthfulness in his statements, the appellant stated "they lied to me so I lied to them."

At the suppression hearing, the trial court found that "from the totality of all the proof that the defendant did freely and voluntarily give these statements and [was] advised of [his] rights and understood [his] rights and that [he] gave these statements without any coercion, and [that] they would be admissible in proof in the case."

The appellant is correct in his assertion that, to be admissible, a defendant's statement must have been made voluntarily.  Jackson v. Denno, 378 U.S. 368, 376, 84 S.Ct. 1774, 1780 (1964); see also  Oregon v. Elstad, 470 U.S. 298, 304-305, 105 S.Ct. 1285, 1290-91 (1985).  A trial court's determination, with regard to the voluntariness of statements made by the defendant during custodial interrogation and the compliance by the police with the Miranda mandate, is presumptively correct on appeal, unless the reviewing court finds that the evidence touching those matters preponderates against the trial court's findings.  State v. Stephenson, 878 S.W.2d 530, 544 (Tenn. 1994);  State v. Nakdimen, 735 S.W.2d 799, 802 (Tenn. Crim. App. 1987) (citations omitted). Nothing in the record preponderates against the trial court's determination that the appellant's statements were voluntary and not the result of coercion, threats, or lack of knowledge of his constitutional rights.  This issue is without merit.

## V. Photographs of Victim

The appellant argues that it was reversible error for the trial court to admit into evidence a color photograph of the victim as he appeared at the crime scene. He asserts that "[t]he fact that the victim was deceased was shown by a [previously introduced photograph]," depicting the victim at the morgue. Continuing, he maintains that "[the photograph] was not necessary because identification and death was established by the medical examiner." Accordingly, the appellant concludes that the photograph is "unnecessary and inflammatory," and, therefore, "should not have been admitted because its prejudicial value outweighed its probative value and its relevance."

"The admissibility of photographs lies within the discretion of the trial court." State v. Banks, 564 S.W.2d 947, 949 (Tenn. 1978). The court's "ruling, in this respect, will not be overturned on appeal except upon a clear showing of an abuse of discretion." Id. (citations omitted); see also Stephenson, 878 S.W.2d at 542; State v. Bordis, 905 S.W.2d 214, 226 (Tenn. Crim. App.), perm. to appeal denied. (Tenn. 1995). However, before a photograph may be admitted into evidence, it must be relevant to an issue that the jury must decide and the probative value of the photograph must outweigh any prejudicial effect that it may have upon the trier of fact. State v. Braden, 867 S.W.2d 750, 758 (Tenn. Crim. App.), perm. to appeal denied, (Tenn. 1993) (citation omitted); see also Tenn.R.Evid. 401 and 403.

The contested photograph establishes the location of the victim's body when discovered at the crime scene. Photographs of a victim's body taken at the scene of the incident are admissible. State v. Van Tran, 864 S.W.2d 465, 477 (Tenn. 1993), cert. denied, -- U.S.--, 114 S.Ct. 1577 (1994). Moreover, a

photograph used to supplement and clarify oral testimony describing the crime scene is likewise admissible. State v. Duncan, 698 S.W.2d 63, 69 (Tenn.), cert. denied, 475 U.S. 1031, 106 S.Ct. 1240 (1985). The photograph at issue is neither gruesome nor bloody. Nothing in the record demonstrates that the trial court abused its discretion in admitting this photograph. Accordingly, we find this issue to be without merit.

## VI. Jury Instructions

In his final issue, the appellant argues that the trial court should have charged the jury on the lesser offense of facilitation of felony murder. We disagree.

The appellant relies upon State v. Lewis, 919 S.W.2d 62 (Tenn. Crim. App. 1995), as authority. In Lewis, 919 S.W.2d at 67, a panel of this court held that "virtually every time one is charged with a felony by way of **criminal responsibility** for the conduct of another, **facilitation** of the felony would be a lesser included offense." [7] (Emphasis in original). "[O]ne can be guilty of felony murder based on that person's criminal responsibility for the conduct of another person." Id. Thus, if a person can be guilty of felony murder because that person is responsible for the conduct of another, then that person could be guilty of facilitation of felony murder because the two statutes deal with criminal responsibility. Id.

---

[7]Tenn. Code Ann. §39-11-402 (1991) provides:
A person is criminally responsible for an offense committed by another if:
(2) Acting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense.

Tenn. Code Ann. § 39-11-403 (1991), provides:
(a) A person is criminally responsible for the facilitation of a felony if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402[(2)], the person knowingly furnishes substantial assistance in the commission of the felony.

However, the holding in Lewis "is not a blanket rule to be applied in every felony murder case where the defendant is not the party who commits the murder during the felony." State v. Utley, 928 S.W.2d 448, 452 (Tenn. Crim. App. 1995), perm. to appeal denied, (Tenn. 1996). Rather, a trial court should instruct the jury as to facilitation of felony murder only where the facts could cause reasonable minds to conclude that the defendant lacked the intent to promote or assist in, or benefit from, the underlying felony's commission. Id. (citation omitted) (emphasis added).

In the case before us, the State's proof established that it was the appellant who initiated the robbery, who furnished the murder weapon, who benefited in the proceeds, and who was present when the murder occurred. The appellant's proof at trial denied any participation or planning in the robbery. In fact, the appellant testified that his sole purpose for entering the store was to purchase cigars. Thus, the appellant denied that he "knowingly furnish[ed] substantial assistance in the commission of the felony" of first degree murder. We conclude that these facts clearly distinguish this case from the facts in Lewis, 919 S.W.2d at 62.

While it is generally error in a homicide case for the trial court not to instruct the jury on all lesser included offenses, see Johnson v. State, 531 S.W.2d 558, 559 (Tenn.1975), where the record clearly shows that the defendant was guilty of the greater offense and is devoid of any evidence permitting an inference of guilt of the lesser offense, it is not error to fail to charge on a lesser offense. State v. Boyd, 797 S.W.2d 589, 593 (Tenn. 1990) (citing State v. King, 718 S.W.2d 241, 245 (Tenn.1986)). We conclude that the trial court was correct in not instructing the jury on the lesser included offense of facilitation of felony murder. This issue is without merit.

14

## VII. Conclusion

After a review of the record and the applicable law, we find no reversible error in the judgment of the trial court. Accordingly, the judgments of conviction and sentences imposed are affirmed.

_____
DAVID G. HAYES, Judge

CONCUR:


_____
PAUL G. SUMMERS, Judge


_____
THOMAS T. WOODALL, Judge