**STATE of Tennessee, Appellee,**

v.

**Joe L. UTLEY, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

Dec. 6, 1995.

Permission to Appeal Denied by Supreme Court May 13, 1996.

Lionel R. Barrett, Jr., Nashville, for Appellant on appeal.

Mark Fishburn, Tom Smith, Nashville, for Appellant at trial.

Charles W. Burson, Attorney General and Reporter, William David Bridgers, Asst. Attorney General, Nashville, Victor S. Johnson, III, District Attorney General, Tom Thurman, Mary Campbell, Asst. District Attorneys General, Nashville, for Appellee.

## OPINION

SUMMERS, Judge.

The appellant, Joe L. Utley, was convicted by a jury of felony murder and especially aggravated robbery. He received a life sentence and a concurrent twenty year sentence respectively. On appeal he raises four issues for review. First, he claims that the evidence was insufficient to convict him of first degree murder. Secondly, he argues that the trial court erred in not instructing the jury as to facilitation of felony murder. Next, he contends that the trial court erred in failing to suppress the identifications made by two witnesses. Finally, the appellant challenges the constitutionality of the felony murder statute. Following our review, we affirm the judgment of the trial court.

The testimony presented at trial revealed that on January 7, 1993, four men, Derrick Carey, Eric Brown, Donald Walton and the appellant, entered the Las Palmas Restaurant on Antioch Pike wearing gloves and ski masks. Carey and Walton carried shotguns and remained near the front of the restaurant while Brown and the appellant were in the rear of the establishment. Brown fired a

shot with a pistol to gain the attention of the employees and customers and ordered everyone to the floor. Carey asked Raphael Magna, an employee, where the safe was located. When Magna could not provide an answer, Carey shot Magna, who died as a result of the gunshot. Just as the restaurant's manager was attempting to open the safe, one of the men yelled "Five–O," indicating that the police were on their way and all four men left hurriedly taking over $500 in cash with them.

Officer Dennis Hamm of the Nashville Police Department arrived on the scene and began to search the surrounding area. Within minutes, Officer Hamm spotted the appellant running behind a building located about two hundred yards from the restaurant. Hamm stopped the appellant, who stated that he had been dropped off by a bus and was looking for a phone to call his father. However, John Cannon of the Metro Transit Authority (MTA) testified that no MTA buses had run a route on Harding and Antioch after 6:00 p.m. that evening. Meanwhile, a description of one of the suspects was broadcast over Hamm's police radio which indicated that he was wearing a multi-colored jacket with dark pants. Because the appellant matched this description, Officer Hamm advised the appellant of his rights and immediately took him back to the restaurant to see if any of the customers recognized him.

Two patrons, Kimberly Honeycutt and Heidi Fralick, independently identified the appellant as one of the robbers based upon his build and the jacket worn during the robbery. Further, both gave essentially the same account of the events leading up to the death of the victim and eventual flight of the robbers. However, both admitted that they had not seen the face of the robbers. Honeycutt testified that when she saw the appellant she realized that she had met him casually on an earlier occasion. Another patron, Sherry Smith, testified that she heard someone say, "Get down on the floor," at which time she observed a man in a black Raiders jacket. She, too, heard two shots

fired but could not observe the events from where she was situated.

Brown, an accomplice, testified against the appellant. He indicated that the four men had met at an apartment earlier that evening to plan a robbery. Although some of the men carried weapons, Brown stated that the men had agreed they would not harm anyone. The four had originally planned to rob the nearby Applebee's restaurant but a heavy police presence detoured them to Las Palmas. Brown indicated that they drove to the restaurant in a stolen automobile which they parked nearby as a getaway vehicle. According to Brown, Carey, Walton and he had planned to enter through the front of the store and that appellant was to have been the driver. However, after entering the restaurant, Brown went to the rear of the restaurant where he saw the appellant. Brown explained that he did not know how the appellant entered the building. The other two accomplices remained near the cash register in the front of the store. Brown stated that he had fired a shot to get everyone's attention but was surprised when the victim was shot. When one of the robbers indicated that the police were coming, Brown and the appellant exited through the back door. Brown stated that he had worn a San Jose Sharks cap and the appellant had worn black jeans, a Sharks coat and red shoes.[1]

## I.

▆ In his first issue, the appellant claims that the evidence was insufficient to support the verdict of first degree murder. In Tennessee, great weight is given to the result reached by the jury in a criminal trial. A jury verdict accredits the state's witnesses and resolves all conflicts in favor of the state. *State v. Williams*, 657 S.W.2d 405 (Tenn. 1983). On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Cabbage*, 571 S.W.2d 832 (Tenn.1978). Moreover, a guilty verdict removes the presumption of innocence, which the appellant enjoyed at trial,

---

**1.** Other officers gave testimony which implicated the other three codefendants and more clearly tied the four to the robbery of Las Palmas.

and raises a presumption of guilt on appeal. *State v. Grace,* 493 S.W.2d 474 (Tenn.1973). The appellant has the burden of overcoming this presumption of guilt. *Id.*

██ Where sufficiency of the evidence is challenged, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime or crimes beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Duncan,* 698 S.W.2d 63 (Tenn.1985); Tenn. R.App.P., Rule 13(e).

The appellant contends that, as an accomplice, the evidence failed to show that he had the requisite intent to commit murder. Further, he claims that there was no evidence to prove the necessary elements of deliberation and premeditation. However, the appellant's attack is misguided. Felony murder is defined as "[a] reckless killing of another committed in the perpetration of, or attempt to perpetrate any first degree murder, arson, rape, robbery, burglary, theft, kidnapping or aircraft piracy." Tenn.Code Ann. § 39–13–202(a)(2) (1991).

██ The mental element required for felony murder is recklessness which the state carries the burden of proving. In effect, the appellant is arguing that the jury was required to conclude that he intended to cause the victim's death. Again, the appellant's argument is misdirected. "When one enters into a scheme with another to commit one of the felonies enumerated in [the felony murder statute] and death ensues, [all] defendants are responsible for the death, regardless of who actually committed the murder and whether the killing was specifically contemplated by the other. *State v. Brown,* 756 S.W.2d 700, 704 (Tenn.Crim.App.1988).

██ The jury heard testimony that the four men devised a plan to rob a restaurant during which they would carry guns. The testimony further placed all four men, including the appellant, at the scene, participating in the robbery. A robbery in fact occurred during which the victim was killed for failing to render the information desired by an accomplice. That the appellant did not actually shoot the victim is of no consequence in a felony murder trial. Once the evidence was presented to the jury, it became their duty to determine whether the appellant was guilty based on the evidence before them. Here, they accredited the state's witnesses and found the appellant guilty of aggravated robbery and felony murder. The weight and credibility of the witnesses' testimony are matters entrusted exclusively to the jury as the triers of fact. *State v. Sheffield,* 676 S.W.2d 542 (Tenn.1984); *Byrge v. State,* 575 S.W.2d 292 (Tenn.Crim.App.1978). We will not reweigh the evidence where it was sufficient for the jury to find the appellant guilty. The appellant has failed to meet his burden. This issue is without merit.

## II.

██ The appellant's second claim is that the trial court erred in refusing to charge the jury on facilitation of felony murder. The state responds that such an offense does not exist in Tennessee; therefore, the trial court properly charged criminal responsibility for the conduct of another pursuant to Tenn. Code Ann. § 39–11–402 (1991).[2] A panel of this Court recently held that facilitation of felony murder does exist and that "virtually every time one is charged with a felony by way of *criminal responsibility* for the conduct of another, *facilitation* of the felony would be a lesser included offense." *State v. Lewis,* 919 S.W.2d 62, 67 (Tenn.Crim.App. 1995). In *Lewis,* the Court concluded that:

> knowledge of the specific felony required under Tennessee Code Annotated section 39–11–403 is met in a felony murder prosecution not by knowledge of the felony murder, but by the knowledge that the other person was going to commit the underlying felony. In the case *sub judice,* the Defendant could be guilty of facilitation of felony

2. Tenn.Code Ann. § 39–11–402 provides that "[a] person is criminally responsible for an offense committed by the conduct of another if: ... (2) Acting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense ..."

murder because he knew his co-defendant was planning a robbery, which is the underlying felony of the felony murder.

*Id.* at 68. Citing the Sentencing Commission Comments accompanying Tenn.Code Ann. § 39–11–403 (1991), this Court established that this section recognizes a lesser degree of criminal responsibility than § 39–11–401 (1991).[3] The Sentencing Comments provide that § 39–11–403 applies to "a person who facilitates criminal conduct of another by knowingly furnishing substantial assistance to the perpetrator of a felony, *but who lacks the intent to promote or assist in, or benefit from, the felony's commission.*"[4] *Lewis,* 919 S.W.2d at 68 (emphasis added). This description distinguishes *Lewis* from the present case.

In *Lewis* the defendant, his girlfriend's sister, and the codefendant were traveling to Franklin when they passed a man talking on a pay phone in front of a car wash. *Id.* at 65. In her trial testimony, the sister of the defendant's girlfriend testified that the codefendant had said he wanted to "take dude's car" and told the defendant to pull over. *Id.* at 65–66. The codefendant asked for the defendant's gun at which time the defendant did not say anything. The witness said that the defendant pulled the car over almost half a block from the car wash. Although she had not seen the exchange of a gun, she noticed that the codefendant had a handgun when he exited the vehicle. When the codefendant began to walk toward the man, the defendant drove up next to him and told him to get back in the car. However, when the codefendant continued to walk toward the man, the defendant pulled the car behind the car wash. Shortly thereafter, shots were fired and the codefendant ran to the car and stated that he "just took dude out." After the codefendant jumped into the back seat, the defendant drove away. *Id.*

The present scenario is a classic felony murder case in which the appellant and his three cohorts met prior to the robbery and established a plan to rob a restaurant. The testimony at trial indicated that the men discussed the use of weapons and their intent not to hurt anyone. The accomplice's testimony at trial placed the appellant inside the restaurant during the robbery which resulted in the death of a restaurant employee. Here, the evidence indicated that the appellant intended to "participate in" and "benefit from" the robbery. No testimony was presented to indicate that the appellant's participation was in any way accidental or unintentional. Counsel for the appellant attempted to elicit such testimony during codefendant Brown's testimony but was unsuccessful. Even though Brown wavered on certain specifics of that night's events, he was certain that the appellant was present inside the restaurant during the robbery. No other evidence was offered to indicate that the appellant was not involved in the robbery. We find that this factual distinction removes this appellant from the holding in *Lewis.*

■ The *Lewis* holding is not a blanket rule to be used in all felony murder cases where the defendant is not the party who commits murder during the felony. Instead, *Lewis* stands for the proposition that a trial court should instruct the jury as to facilitation of felony murder only where the facts could cause reasonable minds to conclude that the defendant lacked the intent to promote or assist in, or benefit from, the [underlying] felony's commission. *See* Sentencing Commission Comments to Tenn.Code Ann. § 39–11–403. Because of the two-fold nature of felony murder, logic dictates that the holding in *Lewis* should be applicable where the defendant may not have had the intention to "promote or assist in, or benefit from" the underlying felony rather than simply a lack of intent to participate in the felony murder.

3. Tenn.Code Ann. § 39–11–401 states that "[a] person is criminally responsible as a party to an offense if the offense is committed by the person's own conduct, by the conduct of another for which the person is criminally responsible, or by both."

4. The Sentencing Commission Comments also indicate that a defendant whose degree of com-

plicity is insufficient to warrant conviction as a party may be found guilty of facilitation. "The lesser punishment is appropriate because the offender, though facilitating the offense, lacked the intent to promote, assist or benefit from the offense." Tenn.Code Ann. § 39–11–403 Sentencing Commission Comments.

In *Lewis,* it was not only a jury question as to whether the defendant desired to be involved in the felony murder but also as to whether he intended to assist in the aggravated robbery of the victim's automobile. In the instant case, no such evidence existed.

A trial court commits reversible error if it fails to instruct regarding a lesser included offense when there is evidence upon which reasonable minds could convict the defendant of that offense. *Johnson v. State,* 531 S.W.2d 558, 559 (Tenn.1975). However, "there is no requirement to include such instructions when no evidence at all is offered as to lesser included offenses." *Id.* at 559. For the above stated reasons we find that no evidence existed in this case to support a lesser included offense of facilitation of felony murder. This issue is without merit.

### III.

In his third issue, the appellant argues that the trial court erred in overruling his motion to suppress two witnesses' identifications. Unfortunately, the record does not contain the transcript from the hearing on the motion to suppress. It is the appellant's duty to prepare a record "which conveys a fair, accurate and complete account of what transpired" in the trial court with regard to an issue now being appealed. Tenn.R.App. P., Rule 24(b); *State v. Ballard,* 855 S.W.2d 557, 560 (Tenn.1993). This Court is precluded from considering an issue when the record does not contain a necessary transcript. *Id.* at 561. We, therefore, are unable to determine on what basis the trial court denied the motion. Accordingly, this issue is waived.

### IV.

Finally, the appellant contends that Tennessee's felony murder statute is unconstitutional under the Tennessee and United States Constitutions. Our Supreme Court recently addressed this precise issue and upheld the statute. *State v. Walker,* 893 S.W.2d 429 (Tenn.1995). This issue is without merit.

Because we conclude that the appellant's issues are without merit, the judgment and sentence of the trial court are, in all respects,

**AFFIRMED.**

PEAY and WELLES, JJ., concur.