IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

MAY 1998 SESSION

FILED

October 29, 1998

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | * | C.C.A. # 01C01-9703-CR-00083 |
| Appellee, | * | DAVIDSON COUNTY |
| VS. | * | Honorable J. Randall Wyatt, Jr., Judge |
| RICHARD BRUCE HALFACRE | * | (First Degree Murder; Especially Aggravated Robbery) |
| and BLAKE EDWARD HALLUM, | * | |
| Appellants. | * | |

For Appellant Halfacre:

Terry J. Canady
211 Printer's Alley Building
Suite 400
Nashville, TN 37201

For Appellant Hallum:

Michael D. Noel
2400 Crestmoor Road
Suite 318
Nashville, TN 37215

For Appellee:

John Knox Walkup
Attorney General & Reporter

Karen M. Yacuzzo
Assistant Attorney General
423 Fifth Avenue North
Cordell Hull Building, 2nd Floor
Nashville, TN 37243-0493

Ron Miller
Assistant District Attorney General
222 Second Avenue, North
Washington Square, Suite 500
Nashville, TN 37201-1649

OPINION FILED: _____

AFFIRMED

GARY R. WADE, PRESIDING JUDGE

## OPINION

The defendants, Blake Edward Hallum and Richard Bruce Halfacre, were tried jointly and convicted of felony murder and especially aggravated robbery. The trial court imposed life sentences for the murder and seventeen-year sentences for the robbery on each defendant to be served consecutively.

In this appeal of right, the defendants present the following issues for review:

> (I)     whether the trial court erred by failing to charge lesser offenses of felony murder and especially aggravated robbery; and

> (II)     whether improper argument by the state requires reversal.

We affirm the judgment of the trial court.

On July 20, 1994, Mary Villareal spent the evening watching television with her son, the victim, Rick Villareal. The victim was in possession of a briefcase, which contained about $1000 in cash which he had just received from the sale of a washer, a dryer and a car. When he left the residence at approximately 10:30 p.m., he was also wearing several pieces of jewelry: two wedding bands, a ruby ring, a diamond ring, a gold link bracelet, a watch, and a gold chain.

About five hours later, Officer Jack Robert Campbell was dispatched to investigate a report that a "man [was] down" at the park. Gary Honeycutt led Officer Campbell to the victim, who was lying unconscious on the ground. Officer Campbell originally believed the victim either had too much to drink or was suffering from some type of seizure and arranged for the victim to be transported to the hospital. Later, he learned the victim had sustained a fatal head injury and had died only hours after his hospitalization.

2

Steven Huffines, who was serving time in the Sumner County Jail at the time of trial, recalled that both defendants visited his residence during the early morning hours after the assault of the victim. They were carrying a briefcase which contained over $500, some jewelry and some papers. He testified that defendant Halfacre claimed to have found the briefcase on the side of the road.

The defendant Hallum is the great uncle of one of the children of Sherry Hayes, who had been close friends to both defendants for about seven years. On the afternoon after the shooting, the defendant Halfacre called Ms. Hayes and asked her to meet the defendants at the Megamarket in Hermitage and to provide them each transportation. When she arrived, the defendants, who were in possession of a briefcase, indicated that they needed to get rid of the briefcase and then leave Nashville. Hallum, who was in the back seat, cried and stated that he never meant to hurt anyone. He told Ms. Hayes that he had waited in the woods at the park while Halfacre sat on a picnic table and had observed Halfacre lead the victim "into the woods." Hallum informed Ms. Hayes that the victim "was up on his knees when they left."

Ms. Hayes, who had prior convictions for theft and fraudulent use of a credit card, drove to a location in LaVergne, where the defendants walked to the woods and burned the briefcase. Later, the three went to a restaurant and the defendants explained that they needed to leave the state to avoid spending the rest of their lives in jail. The defendants spent that night at her apartment. While there, defendant Hallum removed the telephone from the wall.

James McGaugh, owner of Shipley Donuts, recalled that the defendant Halfacre worked for him about one year before he was terminated in July of 1994.

3

In August of 1994, McGaugh received a claim from Halfacre for unemployment benefits. The claim was mailed from Los Angeles, California.

Detective Alfred Gray, who was assigned to investigate the murder, eventually learned both defendants were in California. Halfacre returned to Nashville and was arrested. Defendant Hallum was arrested in California almost eleven months after the murder.

Dr. Mona Harlan, who performed an autopsy on the victim, testified that the victim had suffered a large subgaleal hematoma between his scalp and skull. The victim also suffered bruises to his left eye, cuts inside his lip, a bruise and scrape on his right wrist, and a scrape on his cheek. Dr. Harlan stated that the hematoma to the skull, the cause of death, was caused by "one big blow" with a blunt object, such as a bat.

I

Both defendants contend the trial court committed reversible error by failing to instruct the jury on the lesser offenses raised by the evidence. In count one, each defendant was charged with felony murder. Reckless homicide was the only lesser offense charged to the jury. Both defendants now argue the trial court should also have charged criminally negligent homicide and facilitation of felony murder. In count two, each defendant was charged with especially aggravated robbery; no lesser offenses were charged. Each defendant now argues the trial court should also have charged facilitation of especially aggravated robbery.

The trial judge has a duty to give a complete charge of the law applicable to the facts of the case. State v. Harbison, 704 S.W.2d 314, 319 (Tenn.

4

1986).  There is an obligation "to charge the jury as to all of the law of each offense included in the indictment, without any request on the part of the defendant to do so."  Tenn. Code Ann. § 40-18-110(a).  "Pursuant to our statute, rule, and case law interpretations, defendants are entitled to jury instructions on all [lesser offenses], if the evidence would support a conviction for the offense."  State v. Trusty, 919 S.W.2d 305, 311 (Tenn. 1996).  Such a charge "allows the jury to consider all relevant offenses in determining the appropriate offense, if any, for conviction" and "more evenly balances the rights of the defendant and the prosecution and serves the interests of justice."  Id.  Trial courts, however, are not required to charge the jury on a lesser included offense when the record is devoid of evidence to support an inference of guilt of the lesser offense.  State v. Stephenson, 878 S.W.2d 530, 549-50 (Tenn. 1994); State v. Boyd, 797 S.W.2d 589, 593 (Tenn. 1990).

In State v. Trusty, 919 S.W.2d 305, 310 (Tenn. 1996), our supreme court ruled as follows:

> Tennessee law recognizes two types of lesser offenses that may be included in the offense charged in the indictment: offenses necessarily included in the indictment and offenses that are lesser grades of the charged offense.  An offense is "necessarily included in the indictment ... only if the elements of the included offense are a subset of the elements of the charged offense and only if the greater offense cannot be committed without also committing the lesser offense."

Id.

Our supreme court also provided guidance on how to determine whether an offense is a lesser grade or class of the offense charged:  "[o]ne need only look to the statutes to determine whether a given offense is a lesser grade or class of the crime charged."  Id. at 310.  The court observed that the legislature has divided criminal homicide into the grades of first-degree murder, second-degree

5

murder, voluntary manslaughter, criminally negligent homicide, and vehicular homicide. Id.

We first address the court's failure to charge facilitation of felony murder. The trial court did instruct the jury on the criminal responsibility for the conduct of another statute, which provides, that "a person is criminally responsible for an offense committed by the conduct of another if: (2) [a]cting with the intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense." Tenn. Code Ann. § 39-11-402(2).

The defendants argue that because the criminal responsibility statute was charged, facilitation should also have been charged. Facilitation of a felony occurs where a person "knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under 39-11-402(2), ... knowingly furnishes substantial assistance in the commission of the felony." Tenn. Code Ann. § 39-11-403.

Case law confirms that facilitation is a lesser offense. State v. Utley, 928 S.W.2d 448, 952 (Tenn. Crim. App. 1995). In Utley, the court explained that the crime of facilitation should only be charged "where the facts could cause reasonable minds to conclude that the defendant lacked the intent to promote or assist in or benefit from the felony's commission." Utley, 928 S.W.2d at 452.

While facilitation is a lesser offense of felony murder, it was not, in our view, raised by the evidence in this case. "[R]easonable minds" could not conclude from the proof that either defendant merely facilitated the felony murder. The

6

defendants, longtime friends, went to the park. While Hallum waited in the woods, Halfacre sat on a picnic table looking for a robbery victim. When the victim approached, Halfacre led him to Hallum's location. The victim suffered a severe blow to the head with a blunt object. The defendants took the briefcase and the victim's jewelry and money, traveled to Huffines' residence, and looked through the contents of the victim's briefcase. On the next day, the defendants arranged for transportation to a remote area, where they both burned the victim's briefcase. They took precautions to remain undetected before fleeing to California. Neither defendant chose to submit any proof of a more limited participation in the crimes, electing instead to rely on the possibility of the state failing to meet its evidentiary burden. The jury was left with the choice of convicting or acquitting on the primary charges. Whether one defendant merely facilitated the other in the crimes would have been entirely speculative.

The trial court's failure to charge criminally negligent homicide was not reversible. Criminally negligent homicide is a lesser grade offense of felony murder. State v. Stephenson, 878 S.W.2d 530 (Tenn. 1994). It is defined as "[c]riminally negligent conduct which results in death." Tenn. Code Ann. § 39-13-212(a). The degree of negligence required to prove the offense is as follows:

> Criminal negligence refers to a person who acts with criminal negligence with respect to the circumstances surrounding that person's conduct or the result of that conduct when the person ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint.

Tenn. Code Ann. § 39-11-106(4). The facts support an inference that the defendants were lying in wait for the victim. Dr. Harmon testified that a tremendous

7

amount of force would be required to cause the head injury which ultimately led to the victim's death.  Absent other proof, these facts would hardly suggest a criminally negligent homicide.  Thus, there was no error in failing to charge this as a lesser grade offense.

The defendants also argue facilitation of especially aggravated robbery should have been charged.  Again, there is no proof in this record which would support a jury's conclusion that either defendant merely facilitated the other in the robbery.  The defendants acted in concert in robbing a victim and taking his briefcase and jewelry.  On the next day, they burned the briefcase and fled the jurisdiction.  These facts suggest equal culpability.  In our view, the trial court did not err by failing to charge facilitation of especially aggravated robbery.

II

The defendants next argue that improper argument by the state requires reversal.  They complain that the prosecutor inappropriately commented on previously suppressed statements and on their right to remain silent.

The defendants were indicted together but had filed motions to sever, based on the fact that each defendant gave a statement which implicated the other.  Apparently, the trial judge denied the motion to sever but ruled that the statements would not be admissible at trial.  See Tenn. R. Crim. P. 14(c)(1).  The record contains an order denying the severance.  It does not, however, contain an order suppressing the statements.

During cross-examination of Detective Gray, defense counsel for Hallum elicited the following testimony:

8

Defense attorney: Did you ever have an occasion at any time to go to Smyrna and look for where the briefcase might have been burned in LaVergne?

Detective Gray: No, sir; I did not.

Defense attorney: Were you given information by Mrs. Hayes that one was burned in Smyrna or LaVergne?

Detective Gray: No, sir; I was not.

Defense attorney: And so you've never had an occasion to go down there to look and see if you could find this place where this brief case was burned?

Detective Gray: The defendant never gave me the exact location where I could find that briefcase.

Defense attorney: Ms. Hayes?

Detective Gray: No, the defendant. That's where I got the information from.

Defense attorney: If it please the court, the question was did Ms. Hayes tell you where the briefcase was burned?

Detective Gray: Mrs. Hayes never ... mentioned the briefcase, sir.

After Detective Gray had completed his testimony, a jury-out conference was held. Defense counsel explained that he left that portion of Detective Gray's testimony "alone because [he] didn't want to create a bigger problem." The trial court found the witness's reference to the suppressed statement inadvertent and offered to give a curative instruction; defense counsel declined.

Noting that Ms. Hayes spoke with the police several times, defense counsel argued in closing:

I asked her, did you ever tell about ... burning the brief case. Well, that's just insignificant. She didn't say that, but that's the way they would have you believe. ... Well, did it happen near your brother's? Well, you know, I guess. It's just somewhere out in the woods. But then pin her down on it, well, it's three or four hundred feet

9

from my brother's business, so to speak. Al Gray never went down there and looked to see if all that was true, from the best I could tell.

She either lied when she testified here or she lied when she gave the statement to the police. There's no two ways about it. One of those two times is a lie.

The state responded to the attack on Ms. Hayes' credibility:

Mr. Noel talked to you about Sherry Hayes going to burn the briefcase. The first thing that we heard about where she went, other than in LaVergne, a specific location, was did you go to your brother's business, or how close to your brother's business... That's the first we'd heard about that.

She didn't tell Officer Gray anything about the briefcase. She didn't tell the police officers about the briefcase. ... So ask yourself the question, where did Mr. Noel find out about that question in order to ask her. How did he know about that location?

Oftentimes, the ... defense lawyers attack the witnesses in this case, they want to make it seem that we're the ones who pick the witnesses. Well, I didn't pick the witnesses. ... The people who picked the witnesses who testified here today, Mr. Huffines and Sherry Hayes, are Blake Hallum and Richard Halfacre. They're the ones who caused them to come in this Courtroom to testify and tell you what happened, what they saw, and what they told them. The lawyers now want to distance themselves and their clients from Sherry Hayes and Steven Huffines. But at the time that this happened, they were friends ... [A]s the saying goes, they were thick as thieves.

The defendants complain that the emphasized portions of the exchange improperly referred to the previously suppressed statements and the defendants' right to remain silent.

The test to be applied in reviewing a claim of prosecutorial misconduct is "whether the improper conduct could have affected the verdict to the prejudice of the defendant." Harrington v. State, 385 S.W.2d 758, 759 (Tenn. 1965). The

10

factors, set out in <u>Judge v. State</u>, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976), and adopted by the Tennessee Supreme Court in <u>State v. Buck</u>, 670 S.W.2d 600, 609 (Tenn. 1984), are as follows:

> (1) the conduct complained of, viewed in light of the facts and circumstances of the case;
>
> (2) the curative measures undertaken by the court and the prosecution;
>
> (3) the intent of the prosecutor in making the improper statement;
>
> (4) the cumulative effect of the improper conduct and any other errors in the record; and
>
> (5) the relative strength or weakness of the case.

The law clearly prohibits any prosecutorial comment upon the accused's election not to testify. <u>Griffin v. California</u>, 380 U.S. 609 (1965). To do so constitutes misconduct. <u>Id.</u> at 615. The ultimate test of whether that misconduct is reversible error depends on whether it had a prejudicial effect upon the verdict. In our view, the prosecutor's statements do not qualify as comments on the defendants' decision not to testify.

We do find, however, that the comments about how the defense attorney learned about the briefcase were an inappropriate reference to the defendants' prior suppressed statements. Without the benefit of reviewing the order suppressing the statements or the statements themselves, however, it is difficult to assess how egregious the comments were. When viewed in context, the prosecutor's intent appears to have been to argue that while Ms. Hayes may not be the most credible witness, she was a close friend to both defendants and the only person with evidence of how the crime was committed. There were no instructions given by the court nor curative measures taken by the prosecutor. The comment

11

was an isolated incident and did not, in our assessment, affect the verdict. On balance, the defendants have failed to establish that the comment qualified as reversible error.

Accordingly, the judgment of the trial court is affirmed.

_____
Gary R. Wade, Presiding Judge

CONCUR:


_____
David G. Hayes, Judge


_____
Jerry L. Smith, Judge