IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 2, 2024

## STATE OF TENNESSEE v. JONATHAN HAMILTON

**Appeal from the Criminal Court for Shelby County**
**Nos. 18-00006, C1800426        Lee V. Coffee, Judge**

———————————————

### No. W2023-01127-CCA-R3-CD

———————————————

A Shelby County jury convicted the Defendant, Jonathan Hamilton, of first degree felony murder, attempted first degree murder, and employment of a firearm during the commission of a dangerous felony.  The trial court sentenced the Defendant to serve an effective life sentence plus twenty-six years.  On appeal, the Defendant argues that the trial court erred by (1) denying his motions to suppress evidence seized pursuant to a warrant, as well as an out-of-court identification; (2) admitting autopsy photographs; (3) failing to instruct the jury on aggravated assault, facilitation, and accessory after the fact; (4) allowing improper closing arguments; and (5) imposing consecutive sentencing.  Upon our review, we respectfully affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgments of the Criminal Court Affirmed**

TOM GREENHOLTZ, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and KYLE A. HIXSON, JJ., joined.

Gerald S. Green (on appeal) and Blake D. Ballin (at trial), Memphis, Tennessee, for the appellant, Jonathan Hamilton.

Jonathan Skrmetti, Attorney General and Reporter; G. Kirby May, Assistant Attorney General; Steven J. Mulroy, District Attorney General; and Paul Hagerman and Kevin McAlpin, Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION

## FACTUAL BACKGROUND

On the night of September 29, 2017, Quentin Shipp and Tamika Coleman were in the drive-through line at a McDonald's in Memphis, Tennessee. While they waited for their order, a light-colored Acura car drove around a curve, and its occupants began shooting at them. Both Mr. Shipp and Ms. Coleman were shot multiple times, and Ms. Coleman died on the way to the hospital.

Investigating officers found fifteen .40 caliber shell casings and nine .45 caliber shell casings at the scene. A month later, the Memphis Police Department received an anonymous tip that the Defendant and his brother were the shooters. The tip also included the address of the shooters and noted that the vehicle involved in the shooting was at their residence and had been spray painted. Officers arrived at the address and discovered a freshly spray-painted Acura that matched the description of the shooter's vehicle. Additionally, officers observed several black spray-paint cans around the car.

After obtaining a search warrant, officers searched the vehicle and the house. Officers found a Walmart receipt for a money order that they were able to link to the Defendant. A can of spray paint and a .40 caliber shell casing were discovered in the car. Additionally, a .45 caliber firearm, ammunition, and shell casings were found in the house.

Forensic testing determined that the firearm had fired the bullet recovered from one of the victim's bodies and was the source of the shell casings recovered at the scene of the shooting and the house. Testing further confirmed that the Defendant's DNA was present on the firearm and that his fingerprints were on the spray-paint can and throughout the vehicle.

A few days after the search warrant was executed, officers interviewed Mr. Shipp. Mr. Shipp told officers he knew who shot him, but he only knew the nickname of "Hoover Joe." Officers confirmed that "Hoover Joe" was the Defendant's brother, Joseph Hamilton.

Officers administered three separate photo lineups with Mr. Shipp. The first lineup did not include the Defendant or his brother, but Mr. Shipp identified the Defendant in the second lineup and the Defendant's brother in the third lineup as the shooters. The officers then took a typed formal statement from Mr. Shipp, identifying the shooters as the Defendant and his brother.

A Shelby County grand jury charged the Defendant and his brother with first degree murder of Tamika Coleman in the perpetration of or the attempt to perpetrate the first degree murder of Mr. Shipp. It also charged the Defendants with the attempted first degree premeditated murder of Mr. Shipp resulting in serious bodily injury and with employing a firearm during the commission of or attempt to commit a dangerous felony.

Mr. Shipp could not be located for the preliminary hearing. He posted on social media that he was not coming to court to testify and planned to address it "on the street." However, during the trial, Mr. Shipp testified that his social media page had been hacked, and he denied posting the message. Later at trial, Mr. Shipp also testified that he did not remember the night of September 29, 2017, and that he did not know who shot him. He said that the officers circled the pictures on the lineups and threatened to charge him with a criminal offense if he did not cooperate in the investigation.

The Defendant filed several pretrial motions asking the court to suppress the evidence obtained from the search warrant, as well as Mr. Shipp's pretrial identification of him. After a hearing, the court denied both motions and permitted the evidence to be admitted during trial.

The trial began on April 17, 2023. The State called to testify Mr. Shipp and several officers to establish the facts recited above. It also called Dr. Marco Ross, who performed Ms. Coleman's autopsy and created a report of his findings. Before trial, the Defendant filed a motion in limine to prevent various autopsy photographs from being introduced into evidence, though the issue was deferred until trial. In a jury-out hearing, the trial court overruled the Defendant's objections, reasoning the photographs admitted "were not bloody, were not gory." The court further found that the photographs were "relevant to show the injuries that this victim had suffered and relevant to supplement the testimony of Dr. Ross." During his testimony at trial, Dr. Ross identified Ms. Coleman's various gunshot wounds and opined that the multiple gunshot wounds were the cause of her death.

Following the trial, the jury convicted the Defendant as charged. Immediately after the verdict, the trial court sentenced the Defendant to life in prison for the first degree murder conviction.

After a sentencing hearing conducted on July 13, 2023, the trial court imposed a twenty-year sentence for the attempted murder conviction and a six-year sentence for the employment of a firearm conviction. The court ordered all sentences to be aligned consecutively for an effective sentence of life plus twenty-six years. The court reasoned that the Defendant's record of criminal behavior was extensive and found that the Defendant was a dangerous offender. The court also found that consecutive sentencing

was necessary to protect the public from further acts by the Defendant and that the length of the sentences reflected the severity of the offenses.

The trial court heard and denied the Defendant's motion for a new trial on the same day. Twenty-seven days later, the Defendant filed a timely notice of appeal on August 9, 2023.

## ANALYSIS

The Defendant has raised eight issues in this appeal. The Defendant asserts that the trial court erred in the following ways: (1) in denying his motions to suppress the search warrant of his residence and Quentin Shipp's out-of-court identification of him as the shooter; (2) in admitting the autopsy photographs at trial; (3) in denying his requests for jury instructions on aggravated assault, facilitation, and accessory after the fact; (4) in allowing the State to shift the burden of proof during its closing argument; and (5) in imposing consecutive sentencing. For its part, the State asserts that the Defendant has waived these issues by failing to include either the transcripts or rulings from the pretrial hearings, by failing to reference the record to support his argument, and by failing to support his asserted issues with arguments or citations to the record.

We address each of these issues in turn.

### A. MOTIONS TO SUPPRESS EVIDENCE AND IDENTIFICATION

In his first two issues, the Defendant argues that the trial court erred in denying his motion to suppress evidence from a search and his motion to suppress an identification. In response, the State contends that the Defendant has waived these issues because he failed to support them with an adequate appellate record, including transcripts of the pretrial hearings. We agree with the State.

Generally speaking, the Court of Criminal Appeals "is a court of errors and appeals in which matters below are reviewed when presented by a duly authenticated record brought to this [c]ourt pursuant to the Tennessee Rules of Appellate Procedure." *State v. Scott*, No. E2020-01186-CCA-R3-CD, 2022 WL 414354, at *13 (Tenn. Crim. App. Feb. 11, 2022), *no perm. app. filed*. The appellate record consists of "papers and exhibits filed in the trial court, the transcript or statement of the evidence, any requests for instructions, and 'any other matter designated by a party and properly includable in the record[.]'" *State v. Housler*, 167 S.W.3d 294, 295-96 (Tenn. 2005) (quoting Tenn. R. App. P. 24(a)) (footnote omitted). Its purpose "is to convey a fair, accurate and complete account of what transpired

4

with respect to those issues that are the bases of appeal." *Id.* at 296 (citation and internal quotation marks omitted).

For practitioners in the appellate courts, the importance of the appellate record cannot be overstated. Its significance derives from the fact that "[w]hat is in the record sets the boundaries for what the appellate courts may review, and thus only evidence contained therein can be considered." *State v. Bobadilla*, 181 S.W.3d 641, 643 (Tenn. 2005). Stated more simply, if a fact is not in the appellate record, it did not happen. *See State v. Elliot*, 366 S.W.3d 139, 148 (Tenn. Crim. App. 2010) ("An appellate court may consider only evidence contained in the appellate record." (citation and internal quotation marks omitted)). The burden of preparing the appellate record is squarely placed on the party seeking appellate review. *See State v. Myers*, 581 S.W.3d 173, 185 (Tenn. 2019) (citation omitted).

In some cases, we may be able to review a motion to suppress where other parts of the record are sufficient for the appellate court to identify what happened and why. For example, on a motion to suppress a search warrant, the appellate record *may* be sufficient for review when the record contains the search warrant, the officer's affidavit, and the trial court's order denying the motion to suppress. *See State v. Smotherman*, 201 S.W.3d 657, 661 (Tenn. 2006) (finding record sufficient to review a motion to suppress evidence seized through a search warrant when the record contained the warrant, the supporting affidavit, and the trial court's order denying the motion to suppress); *Bobadilla*, 181 S.W.3d at 643 (same).

However, where testimony and evidence are necessary to develop issues for a motion to suppress, an appellant may need to provide transcripts of the evidentiary hearing for an appellate court to review the trial court's disposition. *State v. Draper*, 800 S.W.2d 489, 493 (Tenn. Crim. App. 1990) ("[A] defendant is effectively denied appellate review of an issue when the record transmitted to the appellate court does not contain a transcription of the relevant proceedings in the trial court."). For example, in the context of a motion to suppress an identification, we have recognized that we may be "precluded from considering an issue" when the appellant has failed to ensure the record contains the necessary transcript for our review. *State v. Utley*, 928 S.W.2d 448, 453 (Tenn. Crim. App. 1995).

In this case, the Defendant's brief argues that the trial court should have suppressed the evidence seized pursuant to the warrant because the State failed to establish the informant's basis of knowledge or reliability. However, we have no way to evaluate this argument. The appellate record does not contain an order denying the motion to suppress that identifies the trial court's reasons for doing so. It also does not include transcripts from the hearing on the motion that reference the trial court's findings and reasoning. In other

words, we have no basis at all for determining whether the trial court erred in denying the motion to suppress because we do not know, from the record, why it did so in the first instance.

Unfortunately, we are in a similar position with respect to the Defendant's motion to suppress the identification. Simply by the nature of the issues alleged in the motion, additional testimony and evidence were necessary for the trial court to resolve it. However, the record does not contain an order from the trial court identifying why it denied the motion or what findings it made in doing so. It also does not include a transcript of an evidentiary hearing from which we could evaluate whether the trial court's findings— whatever they may be—have evidentiary support. As such, because the appellate record does not show what happened or why, we are unable to review these issues on their merits. *See State v. Al Mutory*, 581 S.W.3d 741, 755 n.15 (Tenn. 2019) ("Our review and decision are circumscribed by and based upon the record on appeal. Our application of this bedrock principle is neither novel nor unjust." (citations omitted)).

We pause to reflect that the Tennessee Rules of Appellate Procedure allow a party to supplement the record under some circumstances:

> If any matter properly includable is omitted from the record, is improperly included, or is misstated therein, the record may be corrected or modified to conform to the truth. . . . If necessary, the appellate or trial court may direct that a supplemental record be certified and transmitted.

Tenn. R. App. P. 24(e). In this case, the State's brief notified the Defendant that essential parts of the trial court record were not included in the record on appeal. Yet, the Defendant did not file a reply brief or otherwise seek to supplement the appellate record with the trial court's orders or transcripts from the evidentiary hearings. As such, in the absence of a complete and accurate appellate record on these issues, we must respectfully affirm the trial court's denial of the Defendant's motions to suppress. *See State v. Oody*, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991) ("In the absence of an adequate record on appeal, this court must presume that the trial court's rulings were supported by sufficient evidence.").

## B.    ADMISSION OF AUTOPSY PHOTOGRAPHS

The Defendant next challenges the trial court's admission of the photographs of Ms. Coleman's autopsy. The State argues that the Defendant has waived this issue because he has failed to offer an argument on the issue or to "link his general recitation of case law to any specific instances of alleged error in the record in his brief and has therefore waived his claims." We agree with the State.

"As an intermediate court of appeals, our function is principally to review and correct errors." *State v. Holmgren*, No. M2023-00795-CCA-R3-CD, 2024 WL 2891416, at *1 (Tenn. Crim. App. June 10, 2024), *no perm. app. filed*. Properly conceived, our role is not to "sit as self-directed boards of legal inquiry and research, sallying forth each day looking for wrongs to right." *State v. Bristol*, 654 S.W.3d 917, 924 (Tenn. 2022) (citations and alteration omitted). Instead, we rely upon the parties to identify the errors *they* believe were committed in the trial court and to show why *they* believe the law entitles them to relief on appeal. *See Berry v. State*, 366 S.W.3d 160, 169 (Tenn. Crim. App. 2011) (stating that the appellant should identify "those issues most amenable to success on appeal and present those issues to the court supported by citation to authorities and appropriate references to the record").

To that end, "simply raising an issue is not sufficient to preserve it for appellate review." *State v. Gooch*, No. M2022-01395-CCA-R3-CD, 2024 WL 2814624, at *4 n.4 (Tenn. Crim. App. June 3, 2024), *perm. app. filed* (Tenn. Aug. 7, 2024). Instead, Tennessee Rule of Appellate Procedure 27(a)(7)(A) requires the appellant to set forth the contentions "with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on[.]" Reinforcing this requirement, Rule 10(b) of the rules of this court cautions that "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." *See also State v. Molthan*, No. M2021-01108-CCA-R3-CD, 2022 WL 17245128, at *2 (Tenn. Crim. App. Nov. 28, 2022) (finding waiver when the defendant did not "make any argument in support of this issue in his brief" and did not "cite to any authorities or appropriate references in the record"), *no perm. app. filed.*

In his brief, the Defendant's argument heading asserts that the photographs "were not essential" and that they "created a danger" of an emotional decision. Apart from the point heading, the brief offers no other substantive argument beyond identifying the standard of appellate review and citing a single case addressing Tennessee Rule of Evidence 403. For example, the brief does not identify whether the Defendant challenges all the autopsy photographs or only certain ones. It does not show or argue how the challenged photographs lacked probative value, were "not essential," were not helpful to explain the medical examiner's testimony, or were unfairly prejudicial. And, despite acknowledging that this issue is reviewed for an abuse of discretion, the brief offers no thoughts on how the trial court's decision here failed to satisfy that deferential standard.

In essence, to address the Defendant's concerns, we must first construct developed arguments from his conclusory statements and make assumptions about the extent of his requests for relief. Next, we must examine the already extensive record for testimony, evidence, and information relevant to those arguments. We must then address and resolve

those arguments in the context of the applicable law and proper standards of appellate review.

Our role as an error correction court does not include—and perhaps does not even permit—our undertaking the efforts required by the Defendant's submission. *See City of Memphis v. Edwards by & Through Edwards*, No. W2022-00087-SC-R11-CV, 2023 WL 4414598, at *2 (Tenn. July 5, 2023) ("[D]ecades of caselaw and the very foundations of our adversarial justice system dictate that courts cannot and should not shoulder the burden of fashioning the arguments of the parties who have chosen not to do so for themselves." (citation omitted)). After all, the parties generally "know what is best for them and are responsible for advancing the facts and argument entitling them to relief." *State v. Manning*, No. E2022-01715-CCA-R3-CD, 2023 WL 7439203, at *5 (Tenn. Crim. App. Nov. 9, 2023) (citation omitted), *perm. app. denied* (Tenn. May 16, 2024). Because the Defendant's brief does not comply with Tennessee Rule of Appellate Procedure 27(a)(7), we must conclude, regretfully but respectfully, that he has waived appellate consideration of the issues raised. *See State v. Moss*, No. E2022-01227-CCA-R3-CD, 2023 WL 5702902, at *5 (Tenn. Crim. App. Sept. 5, 2023), *no perm. app. filed*.

## C. JURY INSTRUCTIONS

The Defendant next asserts that the trial court erred in denying his request for jury charges on aggravated assault, facilitation of aggravated assault, and accessory after the fact, arguing that the issues were fairly raised by the proof. In response, the State argues that the Defendant has waived these arguments. It contends that the Defendant "merely presented an issue header with no argument whatsoever" as to the aggravated assault and facilitation instructions. The State also maintains that he failed to cite the record or reference the trial court's analysis with respect to the accessory-after-the-fact instruction. We again agree with the State.

### 1. Aggravated Assault and Facilitation of Aggravated Assault

The Defendant first argues that the trial court should have instructed the jury on the offenses of aggravated assault and facilitation of aggravated assault. As with the autopsy photographs, the argument heading on this issue in the Defendant's brief asserts that the trial court should have instructed the jury on the offenses of aggravated assault and facilitation of aggravated assault because the issues were fairly raised. However, the brief offers no further argument whatsoever.

For example, the Defendant's brief does not show how or why these offenses were raised by the evidence, and it cites no part of the record showing his request to the trial

court. Assuming that the Defendant made such a request, his brief does not identify how or why the trial court disagreed. And the brief does not discuss the effect of the jury's convicting him of the charged offense to the exclusion of all lesser-included offenses, assuming them to be so. *State v. Williams*, 977 S.W.2d 101, 106 (Tenn. 1998).

Respectfully, raising an issue in a point heading without any additional argument or supporting authorities is simply not sufficient to preserve that issue for appellate review. *See Trezevant v. Trezevant*, __ S.W.3d __, 2024 WL 3407466, at *3 (Tenn. July 8, 2024) ("[A]n appellant that broadly asserts error in the statement of issues and presents an argument that leaves the opposing party guessing at the issues to which it must respond, or leaves the reviewing court scouring the record for reversible errors, risks having its issues waived."); *Sneed v. Board of Prof'l Resp.*, 301 S.W.3d 603, 614 (Tenn. 2010) ("We also note that in his brief filed in this Court, [the appellant] cites no authority or otherwise attempts to explain how the Panel or the trial court erred in resolving this issue. Thus, even if the issue had merit, which it does not, the issue would be waived."). In the absence of any substance upon which to conduct meaningful appellate review, we have no choice but to find that the Defendant has waived this issue. *See* Tenn. R. App. P. 27(a)(7); Tenn. Ct. Crim. App. R. 10(b).

### 2.     Accessory after the Fact

The Defendant next asserts that the trial court erred in not instructing the jury on accessory-after-the-fact principles. As to this issue, the Defendant's brief generally cites case law addressing special requests for jury instructions. It concludes that the jury charge "fails to fairly submit the legal issues to the jury" and that "a jury could have found that [the Defendant] was guilty of facilitation of a felony or being an Accessory After the Fact if the jury had been comprehensively instructed."

Beyond this, however, the Defendant's brief offers nothing more. It does not show how the evidence raised the possibility that he was an accessory after the fact, and it does not contain a single citation to the lengthy record in its argument section. The brief also fails to show that he objected to the charge at trial or that he requested a specific instruction. Nor does it identify how or why the trial court disagreed with giving the instruction.

To resolve this issue, we must again construct the nature and extent of the arguments for the Defendant, search for possibly relevant facts to support those arguments, and then address those constructed arguments in accordance with the applicable law and standards of appellate review. Consistent with our role as an error-correction court, we respectfully decline to do so. *See City of Memphis*, 2023 WL 4414598, at *2. In the absence of any argument upon which we could conduct meaningful appellate review, we have no choice

but to find that the Defendant has waived this issue.  *See* Tenn. R. App. P. 27(a)(7); Tenn. Ct. Crim. App. R. 10(b).

### D. OBJECTION TO CLOSING ARGUMENTS

The Defendant next contends that the trial court improperly allowed the State to shift the burden of proof in its closing argument by referencing that the Defendant failed to explain some of the circumstantial evidence.  In response, the State argues that the Defendant "fails to support his allegation of error with any case law or analysis."  We again agree with the State.

The Defendant's argument heading asserts that the State's rebuttal closing argument shifted the burden of proof by using a hypothetical.  The argument supporting this issue states, in its entirety, "[t]he prosecution suggested that it may be the duty of a defendant to explain why the circumstantial evidence may lead to [an] erroneous conclusion.  (Record, Vol. 7, P. 965)."

Beyond this statement, the Defendant's brief offers nothing more.  Although the brief provides a citation to the record where the argument appeared, it offers no argument or citations to authority about how the argument is actually improper.  *See State v. Goltz*, 111 S.W.3d 1, 6 (Tenn. Crim. App. 2003).  More importantly, the brief offers no argument or citations to authority showing that the argument was "so inflammatory or improper that i[t] affected the outcome of the trial to the defendant's prejudice."  *State v. Banks*, 271 S.W.3d 90, 131 (Tenn. 2008); *see also State v. Hawkins*, 519 S.W.3d 1, 48 (Tenn. 2017). The Defendant's brief also fails to mention the limiting instruction the trial court gave or argue how this instruction was ineffective in mitigating any prejudice.  *Banks*, 271 S.W.3d at 137.

The Defendant's brief is silent on these points necessary for a showing of relief.  As we have observed above, our role as an error-correction court does not permit us to "fashion[] the arguments of the parties who have chosen not to do so for themselves."  *See City of Memphis*, 2023 WL 4414598, at *2.  In the absence of any argument upon which we could conduct meaningful appellate review, we have no choice but to find that the Defendant has waived this issue.  *See* Tenn. R. App. P. 27(a)(7); Tenn. Ct. Crim. App. R. 10(b).

### E. CONSECUTIVE SENTENCING

Finally, the Defendant asserts that the trial court erred in imposing consecutive sentencing on the basis that he is a dangerous offender.  In response, the State argues that

the Defendant waived this issue by failing to cite to the sentencing hearing, failing to analyze the trial court's findings, and failing to identify any errors in the trial court's analysis. Again, we agree with the State.

Although the Defendant's brief cites general law on consecutive sentences, it does not reference the trial or sentencing hearing record with respect to any proof, and it fails to provide any argument to advance his claim. For example, although the Defendant appears to take issue with consecutive sentences imposed under the dangerous offender category, *see* Tenn. Code Ann. § 40-35-115(b)(4) (2019), his brief does not identify how the trial court's reasoning was improper or how the court otherwise failed to comply with the requirements of *State v. Wilkerson*, 905 S.W.2d 933, 939 (Tenn. 1995).

The Defendant's brief also suggests that the aggregate sentence was greater than that deserved for the offenses committed. However, his brief does not identify how or why this is the case. In fact, the brief does not even identify or discuss anywhere what sentences the trial court actually imposed. From the Defendant's submission, the court has no plausible way to evaluate what is being argued as a basis for error.

Without any argument or citations to the record, we must conclude that the Defendant has waived appellate review of this issue. *E.g.*, *State v. Lott*, No. M2008-02127-CCA-R3-CD, 2010 WL 565664, at *4 (Tenn. Crim. App. Feb. 18, 2010) ("Appellant also makes a cursory statement that her sentences should have been run concurrently rather than consecutively. Appellant includes no argument or citations to authority to support the statement. . . . Because Appellant has failed to cite any authority for this claim, it is waived." (citation omitted)), *no perm. app. filed*. Respectfully, the Defendant is not entitled to relief. *See* Tenn. R. App. P. 27(a)(7); Tenn. Ct. Crim. App. R. 10(b).

## CONCLUSION

In summary, we regrettably hold that the Defendant has waived the challenges to his convictions and sentences by failing to comply with Tennessee Rules of Appellate Procedure 24 and 27. As such, we respectfully affirm the judgments of the trial court.

_____
TOM GREENHOLTZ, JUDGE